UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Samuel T. Whatley, II, | ) Case No. 2:23-cv-00833-RMG-MGB |
| Plaintiff, | ) |
| v. | ) |
| | ) **REPORT AND RECOMMENDATION** |
| Charleston County Board of Elections; | ) |
| South Carolina Election Commission; | ) |
| and South Carolina Ethics Commission, | ) |
| Defendants. | ) |

Samuel T. Whatley, II ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this civil action seeking relief pursuant to 52 U.S.C. §§ 20971 and 20106. (Dkt. No. 1 at 3.) Under 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.), the assigned United States Magistrate Judge is authorized to review this case and submit a recommendation to the United States District Judge. For the reasons discussed below, the undersigned recommends that the Complaint be summarily dismissed without further leave to amend.

## BACKGROUND

Plaintiff brings the instant action against the Charleston County Board of Elections (the "Board"); the South Carolina Election Commission (the "Election Commission"); and the South Carolina Ethics Commission (the "Ethics Commission") (collectively, "Defendants") pursuant to 52 U.S.C. §§ 20971 and 20106, asserting the following Statement of Claim:

> Failure to notify plaintiff of election results and ballot verification for the first election on November 8th, 2022, and removing the plaintiff from the ballot for the special election on February 7th, 2023. Failure to provide proof of notice to voters in the district to plaintiff. Non-feasance of state authorities who did nothing upon receiving several complaints from plaintiff about the machines connecting to the Internet and an outsourced Chinese authenticator known as Feitian in the system among other concerns. Inadequate disability services provided to voters.

(Dkt. No. 1 at 4.) With respect to relief, Plaintiff seeks the following:

> [P]roof of National Institute of Standards and Technology laboratory accreditation for voting machines used in the county by state and local authorities. Compensation for failure to notify plaintiff about election results, registration requirements for the special election, removing plaintiff from the ballot, allowing other candidates to solicit signs on school-premises violating its own policy, and inaction by state authorities.

(*Id.*)

Upon reviewing these initial allegations, the undersigned issued an order notifying Plaintiff that his claims were subject to summary dismissal for lack of subject matter jurisdiction and standing to bring suit. (Dkt. No. 12 at 1–4.) In light of Plaintiff's *pro se* status, the undersigned then afforded him twenty-one days, plus three days for mail time, to file an amended pleading that cured the defects identified in his original Complaint. The order warned Plaintiff that if he filed an amended complaint, it would completely replace the original, such that it should contain all of the claims he wished to assert and a plain short statement of the supporting facts for each of those claims in one document. (*Id.* at 4.) The order further warned that if Plaintiff failed to comply with the undersigned's instructions and cure the identified pleading deficiencies within the time permitted, his claims would be dismissed. (*Id.*)

Despite these warnings, Plaintiff did not file an amended pleading. Instead, he submitted a supplemental letter to address some of the shortcomings discussed in the undersigned's order—in particular, Plaintiff's "personal stake to this case." (Dkt. No. 15 at 1.) Specifically, the letter explained,

> Personal identifiable information (PII) was being sold by the state officials as it was listed publicly on its site for years. In addition, the patents showing the machines connect to the Internet and antitrust violation of the vendor company are included. The details about the foreign authenticator which was listed in one of its brochures has been scrubbed off its site and the public listing is no longer visible.

> State auditor reports indicate inventory violations, failure to pay some employees, and failure to report package and asset details. Additional correspondence from the state officials and the complaint sent about the vendor are included. County officials' mere single postcard of a poll location change failed to notify plaintiff of any registration changes on the February 7th special election and did not adequately provide disability services to voters.

(*Id.*)

Attached to Plaintiff's letter is "supporting evidence" comprised of various disorganized exhibits, including a complaint he lodged with the Ethics Commission on December 6, 2022, in relation to "[t]he status of candidacy for School Board of Trustees District Six in Charleston County School District for the year of 2022," alleging that "various candidates with remaining campaign balances that are sending it to various non-government organizations or intergovernmental groups have partisan ties."[1] (*See id.* at 2, also noting that the Election Commission "ignored [Plaintiff's] concern" regarding the voting machines "connect[ing] to the Internet with offshore companies.") The exhibits also include patents for electronic voting systems/software (*id.* at 8–9); photos of voting locations (*id.* at 12–13); a "Temporary Notice of Polling Place Change" for the "School Board of Trustees District 6 Special Election on February 7, 2023" (*id.* at 15); various findings from the South Carolina Office of the State Auditor pertaining to the Election Commission over the past several years (*id.* at 16–21); and an email titled "Recount," dated November 9, 2022, from Plaintiff to the Board stating,

> There was some concerns about the vendors for the voting machines. Verifying the poll workers counting the ballots shortly after election night has no transparency. Elections commission claimed that there are no recounts. Also, the setup requirements that the machines were placed. I am not conceding.
>
> - Where can poll worker count be verified?
> - Why is nobody doing anything about the vendors?

---

[1] Plaintiff also attached the response letter from the Ethics Commission stating that it was "unable to process [his] complaint" because Plaintiff named the Board as the respondent and the Ethics Commission can investigate complaints against individuals covered by the Ethics Act only. (Dkt. No. 15 at 3.)

- Are the machines supposed to be facing the open where anyone can see it? (Including other people or poll workers).[2]

(*Id.* at 25.)

Generally, "[a] plaintiff may not amend a complaint in piecemeal fashion by merely submitting additional factual allegations." *McClary v. Searles*, 2015 WL 2259312, *1 n.1 (W.D.N.C. May 13, 2015). Nevertheless, for purposes of this Report and Recommendation only, the undersigned considers Plaintiff's supplemental letter and exhibits (Dkt. No. 15) as part of the Complaint to allow for the most comprehensive initial review. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that courts must construe *pro se* pleadings liberally to allow for the development of a potentially meritorious case); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (emphasizing "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities") (internal citations omitted). Any further references to the "Complaint" herein therefore encompass Dkt Nos. 1 and 15. This is the extent of Plaintiff's pleading.

## STANDARD OF REVIEW

The Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. To protect against possible abuses, the court must dismiss any prisoner complaints, or portions of complaints, that are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

---

[2] Plaintiff also included the email response from Charleston County dated November 9, 2022, stating, "There is a final receipt tape (3 total are printed) and one is posted after polls close at the location. The additional 2 are brought back to our office and posted. The State Election Commission is responsible for the statewide voting system." (Dkt. No. 15 at 25.)

4

A complaint is frivolous if it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). Accordingly, a claim based on a "meritless legal theory" or "baseless" factual contentions may be dismissed *sua sponte* at any time under § 1915(e)(2)(B). *Neitzke v. Williams*, 490 U.S. 319, 324–25, 327–28 (1989). The United States Supreme Court has explained that the statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id.* at 326.

As to failure to state a claim, a complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" under Rule 8(a)(2) of the Federal Rules of Civil Procedure. In order to satisfy this standard, a plaintiff must do more than make conclusory statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the court need not accept as true a complaint's legal conclusions). Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. When "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), the complaint fails to state a claim.

*Pro se* complaints are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). A federal court is therefore charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case. *Erickson*, 551 U.S. at 94. Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure to allege facts that set forth a cognizable claim under Rule 8(a)(2). *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390–91 (4th Cir. 1990);

*see also Iqbal*, 556 U.S. at 684 (outlining pleading requirements under Rule 8, Fed. R. Civ. P., for "all civil actions"). The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985).

## DISCUSSION

The Complaint lists two federal statutes as the grounds for relief in this case: 52 U.S.C. §§ 20971 and 20106. (Dkt. No. 1 at 3.) The undersigned reiterates at the outset that the "vague, disjointed nature of Plaintiff's allegations" (Dkt. No. 12 at 2) makes it difficult to discern which facts he offers in support of his claims under these two statutes. *See Beaudett*, 775 F.2d at 1278 (noting that district courts are not required to serve as "mind readers" and "cannot be expected to construct full blown claims from sentence fragments" on a *pro se* plaintiff's behalf); *Campbell v. StoneMor Partners, LP*, No. 3:17-cv-407, 2018 WL 3451390, at *2, 4 (E.D. Va. July 17, 2018) (explaining that courts need not "scour through [a *pro se* plaintiff's] attachments in an attempt to cobble together the facts that could support" the proposed claims or "discern the unexpressed intent of the plaintiff"), *aff'd*, 752 F. App'x 166 (4th Cir. 2019); *see also Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974) (noting that federal courts lack the power to entertain claims that are "so attenuated and unsubstantial as to be absolutely devoid of merit"). Nevertheless, for the reasons discussed below, Plaintiff's claims remain subject to summary dismissal for lack of subject matter jurisdiction and standing to bring suit in any event.

Federal courts are courts of limited jurisdiction, meaning they possess only that power authorized by Article III of the United States Constitution and affirmatively granted by federal statute. *Willy v. Coastal Corp.,* 503 U.S. 131, 136–37 (1992). Accordingly, a federal court is

required, *sua sponte*, to determine if a valid basis for its jurisdiction exists "and to dismiss the action if no such ground appears." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). There is no presumption that a federal court has jurisdiction over a case, *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999), and a plaintiff must allege facts essential to show jurisdiction in his or her pleadings. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). There are two primary bases for exercising original federal jurisdiction: (1) "federal question" under 28 U.S.C. § 1331, and (2) "diversity of citizenship" under 28 U.S.C. § 1332. The Complaint appears to invoke federal question jurisdiction. (Dkt. No. 1 at 3.)

To establish federal question jurisdiction, the plaintiff must assert a cause of action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "[T]he complaint must, however, contain allegations affirmatively and distinctly establishing federal grounds not in mere form, but in substance and not in mere assertion, but in essence and effect." *Burgess v. Charlottesville Savings and Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973) (internal quotation marks and citations omitted). In other words, the court "must look beyond the verbiage of a complaint to the substance of the plaintiff's grievance. . . . " *Id.* Federal jurisdiction therefore requires "more than a simple allegation that jurisdiction exists or citation to a federal statute, and a mere allegation that a federal statute has been violated is not sufficient to invoke federal jurisdiction." *Brantley v. Nationstar Mortg. LLC*, No. 9:19-cv-490-BHH-BM, 2019 WL 8918793, at *3 (D.S.C. Oct. 8, 2019), *adopted*, 2020 WL 1181309 (D.S.C. Mar. 11, 2020) (internal citations omitted).

While the Complaint lists §§ 20971 and 20106 as the bases for Plaintiff's claims, these statutes involve the administration of federal elections. Specifically, the Help America Vote Act of 2002, 52 U.S.C. §§ 20901–21145 ("HAVA"), established the Election Assistance Commission ("EAC") to "serve as a national clearinghouse and resource for the . . . review of procedures with

7

respect to the administration of *Federal* elections." 52 U.S.C. § 20922 (emphasis added). As part of the EAC's duties, the agency provides for the "testing, certification, decertification, and recertification of voting system hardware and software by accredited laboratories." 52 U.S.C. § 20971(a)(1). The Voting Accessibility for the Elderly and Handicapped Act, 52 U.S.C. §§ 20101–20107 ("VAEHA"), promotes "the fundamental right to vote by improving access for handicapped and elderly individuals to registration facilities and polling places for *Federal* elections."[3] *Id.* § 20101 (emphasis added).

As the undersigned previously warned Plaintiff (Dkt. No. 12 at 2–4), there is nothing to suggest—in the Complaint or otherwise—that these federal statutes govern the two municipal elections at the center of this case. To the contrary, there is ample state law that would arguably apply here.[4] *See, e.g.*, S.C. Code §§ 7-13-1610 through 1930 (addressing voting machines); S.C. Code §§ 7-15-310 through 320 (providing voting accommodations for "physically disabled persons"); *see also Krieger v. Loudon Cnty.*, No. 5:13-cv-73, 2014 WL 4923904, at *5 (W.D. Va. Sept. 30, 2014) (finding that VAEHA did not apply where election did not involve a federal office), *aff'd sub nom. Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015); *Kennedy v. Wilkinson*, No. 1:21-cv-1569-ELH, 2021 WL 2649790, at *2 (D. Md. June 28, 2021) (finding that, "[t]o the extent that [the plaintiff] is dissatisfied with voter registration requirements and the manner in which

---

[3] Section 20106 simply clarifies, "This chapter shall not be construed to impair any right guaranteed by the Voting Rights Act of 1965."

[4] The undersigned notes that, with respect to § 20971, states may elect to participate in the EAC's Testing and Certification Program. *See* 52 U.S.C. § 20971(a)(2) ("At the option of a State, the State may provide for the testing, certification, decertification, or recertification of its voting system hardware and software by the laboratories accredited by the [EAC] under this section."). As the Complaint suggests, South Carolina does require that its voting systems be approved by an EAC accredited testing laboratory as meeting federal voting system standards. *See* S.C. Code § 7-13-1620 ("A voting system may not be approved for use in the State unless certified by a testing laboratory accredited by the Federal Election Assistance Commission as meeting or exceeding the minimum requirements of federal voting system standards."). It is for that very reason, however, that Plaintiff may bring his claims pursuant to such state law. *See Cnty. of Nassau v. New York*, 724 F. Supp. 2d 295, 305 (E.D.N.Y. 2010) (explaining that there is no indication that HAVA provides "any exclusive cause of action or, for that matter, any private right of action with respect to voting machines and procedures").

8

voting takes place in Maryland, his grievance is with State law"), *aff'd sub nom. Kennedy v. Garland*, No. 21-1870, 2021 WL 6101831 (4th Cir. Dec. 22, 2021). Accordingly, the undersigned finds that the true substance of Plaintiff's claims still sounds in state law, leaving this Court without federal question jurisdiction. *See, e.g.*, *Hamilton v. United States*, No. 2:20-cv-1666-RMG-MHC, 2020 WL 7001153, at *4 (D.S.C. Aug. 26, 2020) (finding no basis for federal question jurisdiction where complaint failed to allege sufficient facts in support of conclusory references to purported federal violations), *adopted*, 2020 WL 5939235 (D.S.C. Oct. 7, 2020); *Rivers v. Goodstein*, No. 2:18-cv-2032-RMG-MGB, 2018 WL 4658487, at *6 (D.S.C. Sept. 7, 2018) (noting that "[t]he mere recitation of inapplicable statutes in connection with patently frivolous claims" does not raise a colorable federal question), *adopted*, 2018 WL 4656239 (D.S.C. Sept. 27, 2018).

To that end, this Court cannot exercise subject matter jurisdiction over any potential state law claims involving the municipal elections here unless there is complete diversity of parties and an amount in controversy in excess of $75,000 as required under § 1332. Complete diversity of parties means that no party on one side may be a citizen of the same state as any party on the other side. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372–74 (1978); *see also Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (noting that diversity jurisdiction "requires complete diversity among parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant"). Because Plaintiff and Defendants appear to be citizens of South Carolina (*see* Dkt. No. 1 at 2–3; Dkt. No. 4), complete diversity does not exist in this case. Thus, Plaintiff cannot invoke diversity jurisdiction under § 1332, and the Court lacks subject matter jurisdiction over any potential state law claims.

It is worth noting that even if the Court could exercise subject matter jurisdiction here, it is still unclear as to whether Plaintiff has standing to bring this lawsuit in the first instance. Article

9

III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. As the undersigned previously explained (Dkt. No. 12 at 4), "[a] justiciable case or controversy requires a plaintiff who has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) (stating that "a plaintiff generally must assert his own legal rights and interests, and cannot rest his claim on the legal rights or interests of third parties"). To demonstrate standing under Article III, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) ("The plaintiff bears the burden of establishing injury, traceability, and redressability because it is the party seeking to invoke federal jurisdiction."). These three elements "are not mere pleading requirements but rather [are] an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Despite Plaintiff's supplemental filings (Dkt. No. 15), the Complaint still does not indicate that he has met the three requirements outlined above. Once again, the confused nature of the Complaint makes it difficult to ascertain the precise injury of which Plaintiff complains, although a liberal construction of the initial filings suggests that he is challenging his apparent loss and/or removal from the ballot in either one or both of the municipal elections. (Dkt. No. 1 at 4; Dkt. No. 15 at 25.) It remains unclear, however, which of the purported wrongdoings referenced in the Complaint contributed to Plaintiff's failure in the election(s) and how the results of the election(s) were inaccurate, such that a favorable judicial decision would remedy the injustice apparently

experienced by Plaintiff. *See Sakthivel v. Jaddou*, No. 21-1207, 2023 WL 2888565, at *4 (4th Cir. Apr. 11, 2023) (explaining that the injury cannot be "too speculative for Article III purposes"). Thus, the undersigned still cannot discern a clear personalized injury from Plaintiff's allegations and therefore finds that he may also lack standing to bring the instant lawsuit against Defendants.

## CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** that this action be summarily **DISMISSED** without further leave to amend, as Plaintiff has already had an opportunity to do so. *See Britt v. DeJoy*, 45 F.4th 790, 798 (4th Cir. 2022); *see also Workman v. Morrison Healthcare*, 724 F. App'x. 280, 281 (4th Cir. June 4, 2018). In light of this conclusion, the Clerk shall not forward this matter to the United States Marshal Service for service of process at this time.

**IT IS SO RECOMMENDED.**

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

May 30, 2024
Charleston, South Carolina

**The parties' attention is directed to an important notice on the following page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).